SCANNED at CRCC and E-mailed pf1-6
7-18-11   by   BH   .  62  pages
date       initials      No.

PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District |
|---|---|

**Name** (under which you were convicted): WILLIAM CONE

**Docket or Case No:** 11-0724-CV-W-GAF-P

**Place of Confinement :**
Crossroads Correctional Center
1115 East Pence Road, Cameron, Missouri, 64429

**Prisoner No.:**

**Petitioner**
(include the name under which you were convicted)
WILLIAM CONE

V.

**Respondent**
(Authorized person having custody of Petitioner)
LARRY DENNY

The Attorney General of the State of :

## PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:
LAFAYETTE COUNTY CIRCUIT COURT - 15th JUDICIAL CIRCUIT

(b) Criminal docket or case number (if you know): Cir Ct Case No 15V010000051

2. (a) Date of the judgment of conviction (if you know): December 17, 1997

(b) Date of sentencing: February 10, 1998

3. Length of sentence: 133 YEARS - TOTAL Please see, Attached "Sentence and Judgment Papers."

4. In this case, were you convicted on more than one count or of more than one crime?   Yes ✓   No

5. Identify all crimes of which you were convicted and sentenced in this case:
Six (6) Counts Sexual Assault - 1st Degree § 566.040, RSMo (1986)
Thirteen (13) Counts Deviate Sexual Assault - 1st Degree § 566.070, RSMo (1986)

Please see, "Sentence and Judgment Papers."

1

6. (a) What was your plea? (Check one)

    (1) Not guilty ✓                (3) Nolo Contendere (no contest)____

    (2) Guilty ____                  (4) Insanity plea ____

  (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?_____

_____

_____

_____

_____

  (c) If you went to trial, what kind of trial did you have? (check one)

         Jury ✓            Judge only ____

7. Did you testify at a pretrial hearing , trial, or a post-trial hearing?

        Yes ✓          No ____

8. Did you appeal from the judgment of conviction?

        Yes ✓          No ____

9. If you did appeal, answer the following:

  (a) Name of court:___Missouri Court of Appeals, W.D._____

  (b) Docket or case number (if you know):___W.D. # 55518 (Direct Appeals)___

  (c) Result:___Direct Appeal was denied -_____

  (d) Date of result (if you know):___August 24, 1999_____

  (e) Citation to the case (if you know):___State v. Cone, 3 S,W.3d 833 (Mo.App.W.D. 99)

  (f) Grounds raised:___Insufficent evidence to sustain the conviction

_____

_____

_____

  (g) Did you seek further review by a higher state court?    Yes ✓    No____

  If "Yes," answer the following:

    (1) Name of court:___Missouri Supreme Court_____

    (2) Docket or case number (if you know):___Not available_____

    (3) Result:___Application for Transfer - denied November 23, 1999

    (4) Date of result (if you know):___November 23, 1999___

State v. Cone, Mo.S.Ct.No. (Not available)

(5) Citation of the case (if you know): _____

(6) Grounds raised: Insufficient evidence to sustain conviction

_____
_____
_____
_____
_____
_____

(h) Did you file a petition for certiorari in the United States Supreme Court? Yes ___ No ✓
If "Yes," answer the following:

(1) Docket or case number (if you know): No certiorari filed after Direct Appeal

(2) Result: _____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10. Other than the direct appeals listed above, have you previously filed any other petition, application or motions concerning this judgement of conviction in any state court?

Yes ✓           No ___

11. If your answer to Question 10 was "YES," give the following information:

(a) (1) Name of court: Circuit Court Lafayette County, Missouri

(2) Docket or case number (if you know): 15V010000051

(3) Date of filing (if you know): February 22, 2000

(4) Nature of the proceeding: Motion Post-Conviction Relief 29.15

(5) Grounds raised: Please see attached pages

_____
_____
_____
_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?
Yes ✓           No ___

(7) Result: 29.15 PCR Motion was denied

(8) Date of result (if you know): December 19, 2007

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: _____

3

(2) Docket of case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____
_____
_____
_____
_____
_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?
Yes ____      No ____

(7) Result: _____

(8) Date of Result (if you know): _____

(c) If you file any third petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket of case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____
_____
_____
_____
_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

Yes ____      No ____

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:      Yes __✓__      No ____
(2) Second petition      Yes ____       No ____
(3) Third petition       Yes ____       No ____

4

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:_____
_____
_____
_____

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:**_____
_____
_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim):
_____
_____
_____
_____
_____
_____
_____

(b) If you did not exhaust your state remedies on Ground One, explain why:_____
_____
_____
_____

(c) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did your raise this issue?
Yes ____        No ____

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why?_____
_____
_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?   Yes  _V_        No ____

(2) If your answer to Question (d)(1) is "Yes," state:
Type of motion or petition:  _29.15 PCR motion_

Name and location of the court where the motion or petition was filed:_____
_Circuit Court of Lafayette County, Missouri_

5

Docket or case number (if you know): 15VO10000051

Date of the court's decision: _December 19, 2007_

Result (attach a copy of the court's opinion or order, if available): _"Copy attached"_

(3) Did you receive a hearing on your motion or petition?
Yes ✓  No ___

(4) Did you appeal from the denial of your motion or petition?
Yes ✓  No ___

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?
Yes ✓  No ___

(6) If your answer to Question (d)(4) is "Yes," state

Name and location of the court where the appeal was filed: _Missouri Court of Appeals Western District   1300 Cherry Ave - Kansas City, Mo. 64106_

Docket or case number (if you know): _W.D. # 70432_

Date of the court's decision: _April 27, 2010_

Result (attach a copy of the court's opinion or order if available) _"Copy attached"_

(7) If your answer to Question (d)(4) or Questions (d)(5) is "No", explain why you did not raise this issue: _____

(e) **Other Remedies**: Describe any other procedures (such as habeas corpus, administrative remedies, etc) that you have used to exhaust your state remedies on Ground One: _____

GROUND TWO: _____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim):
_____

6

(b) If you did not exhaust your state remedies on Ground Two, explain why:_____
_____
_____
_____

(c) **Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?
        Yes ____        No ____

    (2) If you did <u>not</u> raise this issue in your direct appeal, explain why?_____
_____
_____

(d) **Post-Conviction Proceedings**:

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?
        Yes ✓        No ____

    (2) If your answer to Question (d)(1) is "Yes," state:

        Type of motion or petition: *29.15 PCR Motion*

        Name and location of the court where the motion or petition was filed: *Circuit Court of Lafayette County, Missouri*

        Docket or case number (if you know): *15VO1000051*

        Date of the court's decision: *December 19, 2007*

        Result (attach a copy of the court's opinion or order, if available): *"Copy attached"* *29.15 PCR Motion - Denied*

    (3) Did you receive a hearing on your motion or petition?
        Yes ✓        No ____

    (4) Did you appeal from the denial of your motion or petition?
        Yes ✓        No ____

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?
        Yes ✓        No ____

    (6) If your answer to Question (d)(4) is "Yes," state:

        Name and location of the court where the appeal was filed: *Missouri Court of Appeals, Western District 1300 Cherry Ave. KCMO 64106*

        Docket or case number (if you know): *W.D. # 70432*

        Date of the court's decision: *April 27, 2010*

        Results (attach a copy of the court's opinion or order if available) *"Copy attached"*

(7) If your answer to Question (d)(4) or Questions (d)(5) is "No," explain why you did not raise this issue:_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc) that you have used to exhaust your state remedies on Ground Two:_____

_____

**GROUND THREE:**_____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim):

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Three, explain why:_____

_____

_____

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes ____      No ____

(2) If you did not raise this issue in your direct appeal, explain why?_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?
Yes ✓      No____

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:_____ *29.15 PCR Motion*

Name and location of the court where the motion or petition was filed: *Circuit Court of Lafayette County, Missouri*

Docket or case number (if you know):_____ *15CV010000051*

Date of the court's decision:_____ *December 19, 2007*

8

Remark (attach a copy of the court's opinion or order, if available): *"Copy attached"*

(3) Did you receive a hearing on your motion or petition?
Yes ✓        No ___

(4) Did you appeal from the denial of your motion or petition?
Yes ✓        No ___

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?
Yes ✓        No ___

(6) If your answer to Question (d)(4) is "Yes," state

Name and location of the court where the appeal was filed: *Missouri Court of Appeals Western District 1300 Cherry Ave Kamo GA106*

Docket or case number (if you know): *W.D. # 70432*

Date of the court's decision: *April 27, 2010*

Results (attach a copy of the court's opinion or order if available) *"Copy attached"*

(7) If your answer to Question (d)(4) or Questions (d)(5) is "No," explain why you did not raise this issue: _____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc) that you have used to exhaust your state remedies on Ground Three: _____

**GROUND FOUR:** _____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim):

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

9

(c) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes _____     No ____

(2) If you did not raise this issue in your direct appeal, explain why? _____
_____
_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?
Yes ____     No ____

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____
_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach of copy of the court's opinion or order, if available): _____
_____

(3) Did you receive a hearing on your motion or petition?
Yes ____     No ____

(4) Did you appeal from the denial of your motion or petition?
Yes ____     No ____

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?
Yes ____     No ____

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____
_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order if available) _____
_____

10

## ISSUES PRESENTED FOR HABEAS CORPUS REVIEW

### CLAIM I

IN A CASE OF **"FIRST IMPRESSION"** THE TRIAL COURT ERRED - TO
THE PREJUDICE OF PETITIONER - WHEN THEY ALLOWED THE STATE TO
PROSECUTE PETITIONER IN VIOLATION OF THE DUE PROCESS CLAUSE
OF THE UNITED STATES CONSTITUTION. THE PROSECUTION OF PETITIONER
WAS BASED UPON A RETROSPECTIVE, UNFORESEEABLE, INDEFENSIBLE,
UNPRECEDENTED JUDICIAL EXPANSION OF THE SCOPE OF THE BEHAVIOR
PROHIBITED BY § 566.040 and .070, RSMo (1986), WHICH CONSTITUTED
A **"SHARP BREAK"** WITH OVER ONE-HUNDRED (100) PLUS YEARS OF
MISSOURI **"COMMON LAW"** DOCTRINE; SEE, STATE v. CUNNINGHAM, 12
S.W. 376 (Mo. 1889) to STATE v. BUCK, 724 S.W.2d 574 (Mo.App.W.D.
1987). THIS DEPARTURE FROM MISSOURI **"COMMON LAW"** DOCTRINES
REPRESENTED A DEFINITIVE DEPARTURE AND A **"SHARP BREAK"** THAT
DENIED PETITIONER **"FAIR WARNING."** ROGERS v. TENNESSEE, 532
U.S. 451 (2001); BOUIE v. CITY OF COLUMBIA, 378 U.S. 347 (1967).
AS A RESULT OF THIS RETROSPECTIVE, UNFORESEEABLE REDEFINITION,
PETITIONER WAS DENIED HIS FUNDAMENTAL RIGHTS UNDER THE FOURTEENTH
AMENDMENT TO THE UNITED STATES CONSTITUTION, and ARTCLE I,
SECTIONS 10 and 18(a) OF THE MISSOURI STATE CONSTITUTION.

### CLAIM II

IN A CASE OF **"FIRST IMPRESSION"** TRIAL COUNSEL WAS INEFFECTIVE
- TO THE PREJUDICE OF PETITIONER - FOR FAILING TO: 1) CONSULT

WITH AND CALL A PSYCHIATRIST TO REBUT THE TESTIMONY OF THE THREE
(3) STATE EXPERTS PRESENTED AT TRIAL; and 2) TO EFFECTIVELY
CHALLENGE THE STATE's EXPERT's "**NOVEL THEORY**" ON WHAT "**FACT
SETS**" CONSTITUTED "**INCAPACITY**" AS OUTLINED IN **CLAIM I**. AS A
RESULT, PETITIONER WAS DENIED A FAIR OPPORTUNITY TO PRESENT
A DEFENSE AT TRIAL, WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL
IN DIRECT VIOLATION OF THE STANDARDS ARTICULATED IN <u>STRICKLAND
v. WASHINGTON</u>, 466 U.S. 668 (1984). PETITIONER WAS DENIED HIS
RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES
CONSTITUTION, and ARTICLE I, SECTIONS 10 and 18(a) OF THE
MISSOURI STATE CONSTITUTION.


## CLAIM III


IN A CASE OF "**FIRST IMPRESSION**" PETITIONER WAS DENIED
EFFECTIVE ASSISTANCE OF TRIAL COUNSEL - TO THE PREJUDICE OF
PETITIONER - WHEN COUNSEL FAILED TO FILE A MOTION WITH THE TRIAL
COURT, SEEKING A HEARING PURSUANT <u>FRANKS v. DELEWARE</u>, 438 U.S.
154 (1978). HAD TRIAL COUNSEL FILED A <u>FRANKS</u> HEARING TO EXPOSE
THE MANY CONSTITUTIONAL VIOLATIONS EMBEDDED IN THE STATE's
PROBABLE CAUSE AFFIDAVIT, IF PROVEN TRUE, THIS WOULD HAVE
REPRESENTED A CLEAR "**DOUBLE JEOPARDY**" VIOLATION WHICH WOULD
HAVE BARRED RETRIAL DUE TO THE STATE's MISCONDUCT IN ESTABLISHING
PROBABLE CAUSE IN THE FIRST INSTANCE. THE PROBABLE CAUSE
AFFIDAVIT THAT GAVE RISE TO THIS PROSECUTION, WAS BASED UPON
UNSWORN CONCLUSORY OPINIONS OF PSYCHOLOGICAL EXPERTS WHO
FORMULATED "**NOVEL THEORIES**" OF BOTH "**INCAPACITY**" AND PETITIONER's

MOTIVE AND INTENTIONS THAT DID NOT HAVE GENERAL ACCEPTANCE IN
THE LARGER PSYCHOLOGICAL/PSYCHIATRIC COMMUNITY AND THUS WOULD
NOT HAVE SURVIVED A **FRYE/DAULBERT** CHALLENGE.  THE (PCA) WAS SIGNED
BY THE SPECIAL PROSECUTOR, WHO SWORE TO A SET OF FACTS, AND/OR
"**NEW FACT SETS**" THAT HE NEITHER KNEW PERSONALLY, NOR WAS COMPETENT
TO EVALUATE.  THIS WAS IN DIRECT OPPOSITION TO SUPREME COURT
DOCTRINES KALINA v. FLETCHER, 522 U.S. 118 (1997); GERSTEIN v.
PUGH, 420 U.S. 103 (1975).  TRIAL COUNSEL's PERFORMANCE FELL FAR
BELOW THE STANDARD ARTICULATED IN STRICKLAND v. WASHINGTON, 466
U.S. 668 (1984).


## CLAIM IV


IN A CASE OF "**FIRST IMPRESSION**" THE TRIAL COURT IMPROPERLY
SENTENCED PETITIONER IN DIRECT VIOLATION SECTION 557.036.3 RSMo
(1986).  IN PETITIONER's CASE, THE TRIAL COURT CHANGED THE JURY
RECOMMENDED SEVEN (7) YEAR TERM TO ONE OF ONE-HUNDRED and THIRTY-
THREE (133) YEARS FOR A CLASS C FELONY, A SENTENCE WHICH UNDER
MISSOURI LAW WAS FOUR (4) TIMES GREATER THAN A STATE SENTENCE
FOR FIRST DEGREE HOMICIDE, WHICH IS THIRTY (30) YEARS.  THE TRIAL
COURT DID THIS BY RUNNING ALL NINETEEN (19) SEVEN (7) YEAR
SENTENCES CONSECUTIVELY INSTEAD OF CONCURRENTLY; THUS, INCREASING
THE QUANTUM OF PUNISHMENT WHICH PETITIONER FACED.  SECTION
557.036.1 and 3 ONLY ALLOWS A JUDGE TO INTERVENE AND CHANGE A
JURY RECOMMENDED SENTENCE IN TWO (2) NARROW CIRCUMSTANCES, FIRST,
"WHEN THE STATE PLEADS AND PROVES THE DEFENDANT IS A PRIOR
OFFENDER, A PERSISTENT OFFENDER, DANGEROUS OFFENDER," ... SECOND,

"WHEN THE TERM RENDERED IS LESS THAN THE AUTHORIZED LOWEST TERM FOR THE OFFENSE." IN ANY EVENT, THE COURT CANNOT IMPOSE ON IT's OWN A TERM OF IMPRISONMENT GREATER THAN THE LOWEST TERM PROVIDED. THE TRIAL COURT CLEARLY LACK JURISDICTION TO IMPOSE THE SENTENCE THAT IT DID IN PETITIONER's CASE.

PETITIONER WAS DENIED HIS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, and ARTICLE I, SECTIONS 10 and 18(a) OF THE MISSOURI STATE CONSTITUTION.

## STATEMENT OF CAUSE FOR HABEAS RELIEF

THE STATE COURT's DECISION IN DENYING PETITIONER ON THESE FOUR (4) CLAIMS WERE "CONTRARY TO," and REPRESENTED "UNREASONABLE APPLICATIONS" OF NUMEROUS FIRMLY ESTABLISHED FEDERAL LAW AS DETERMINED BY THE UNITED STATES SUPREME COURT AND THE U.S. CONSTITUTION. WILLIAMS v. TAYLOR, 529 U.S. 362, 405 (2000), als see, 28 U.S.C. § 2254(b)(1) and (2).

## STATEMENT OF EXHAUSTION

PETITIONER HAVE RAISED EACH OF THESE CLAIMS IN THE PROPER STATE COURT FORUMS, AT THE PROPER STATE COURT PROCEEDINGS. EACH CLAIM IS PROPERLY EXHAUSTED, LAMBRIX v. SINGLETARY, 520 U.S. 518, 522 (1997). THE STATE HAS BEEN AFFORDED A FAIR OPPORTUNITY TO ADDRESS EACH CLAIM, PICARD v. CONNER, 404 U.S. 270 (1971); ANDERSON v. HARLESS, 459 U.S. 4, 6 (1982). THIS HABEAS PETITION HAS BEEN TIMELY FILED, 28 U.S.C. § 2244(a). EACH CLAIM WILL BE ARGUED IN FULL AS THIS PROCESS PROCEEDS ON HABEAS REVIEW.

(7) If your answer to Question (d)(4) or Questions (d)(5) is "No", explain why you did not raise this issue:_____
_____

(e) **Other Remedies**: Describe any other procedures (such as habeas corpus, administrative remedies, etc) that you have used to exhaust your state remedies on Ground Four:_____
_____
_____

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?        Yes ✓        No___

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:_____
_____
_____

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:_____
_____
_____
_____

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition? Yes ___        No ✓

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach of copy of any court opinion or order, if available:_____
_____
_____
_____
_____

15. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal for the judgment you are challenging? Yes ___        No ✓

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised: _____
_____
_____
_____
_____

11

16. Give the name and address, if you know, of each attorney who represented you in the following state of the judgment you are challenging:

(a) At preliminary hearing:_____

(b) At arraignment and plea:_____

(c) At trial: _____ FREDRICK MARTIN _____

(d) At sentencing:_____ FREDRICK MARTIN _____

(e) On appeal:_____ GARY BROTHERON (Org BRIEF) _____

(f) In any post-conviction proceeding:_____     JAMES FLETCHER (Org filing)   PHIL GIBSON
(Abandonment Motion/Evidentiary Hearing)

(g) On appeal from any ruling against you in a post-conviction proceeding:_____
REBRECCA L. KURZ_____
_____

17. Do you have any future sentence to serve after you complete the sentence for the judgment you are challenging?     Yes ___        No √

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:
LAFAYETTE COUNTY CIRCUIT COURT - 15th JUDICIAL DISTRICT
_____

(b) Give the date the other sentence was imposed:_____

(c) Give the length of the other sentence:_____

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?     Yes ___      No ___     "at the present time - unsure."

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*(see below)_____

*This petition has been filed in a timely manner within*
*the one (1) year time limitation*
_____
_____
_____
_____

*The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A one-year period limitations shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitations period shall run from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the

12

expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C) the date on which the constitution right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of true diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection.

---

Therefore, petitioner asks that the Court grant the following relief: *(1) Grant Petition for Habeas Relief; (2) Reverse Petitioner's Convictions & Sentences; & (3) Remand down to the state with Instructions consistent with this Courts decision* or any other relief to which petitioner is entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on *July 18, 2011* (month, date, year).

Executed (signed) on *July 18, 2011* (Date).

*William Cone*
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition._____

13

FREDRICK MARTIN, III - Mo.Bar.No. 26573
(Preliminary Hearing/Trial/Sentencing)
P.O. Box 587
West Plains, Mo. 65775

GARY BROTHERTON - Mo.Bar.No. 38990
(Org. Direct Appeal Briefing)
Legal Writes, LLc
601 W. Nifong Blvd - Building 1, Suite C
Columbia, Mo. 65223
573-875-1571

MARTIN J. HADIGAN - Mo.Bar.No. _____
(Appellate Reply Brief)
226 S. Meramac
Clayton, Mo. 63105
314-863-0050

JAMES W. FLETCHER - Mo.Bar.No. _____
(Org. 29.15 filing)
1000 Walnut Street - Suite 1600
Kansas City, Mo. 64106

PHIL GIBSON - Mo.Bar.No. 28610
(29.15 Abandonmnt Motion/Evidentiary Hearing)
Thomason & Gibson, LLc
1200 N.W. South Outer Road, Suite 110
Blue Springs, Mo. 64015
816-228-0505

Ms. REBECCA L. KURZ - Mo.Bar.No. 40451
(Appeal Denial 29.15 - Rehearing Motion - Ct. of Appeals/ Tranfers
Application - Mo. S. Ct.)
142 N. Cherry St.
Olathe, Kansas, 66061
913-829-6336

## Petition for Relief from a Conviction or Sentence
## By a Person in State Custody

### (Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus)

#### Instructions

1. To use this form, you must be a person who is currently serving a sentence under a judgment against you in a state court. You are asking for relief from the conviction or the sentence. This form is your petition for relief.

2. You may also use this form to challenge a state judgment that imposed a sentence to be served in the future, but you must fill in the name of the state where the judgment was entered. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file a motion under 28 U.S.C. § 2255 in the federal court that entered the judgment.

3. Make sure the form is typed or neatly written.

4. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

5. Answer all the questions. You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a brief or arguments, you must submit them in a separate memorandum.

6. You must pay the fee of $5. If the fee is paid, your petition will be filed. If you cannot pay the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out the enclosed in forma pauperis forms. Also, you must submit a certificate signed by an officer at the institution where you are confined showing the amount of money that the institution is holding for you. If the total of the deposits into your account during the period immediately preceding the date you file your petition exceeds $500.00, you must pay the filing fee.

7. In this petition, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different court (either in the same state or in different states), you must file a separate petition.

8. When you have completed the form, send the original (keep one copy for your records) to the Clerk of the United States District Court at this address:

> Clerk, United States District Court
> for the Western District of Missouri
> 400 E Ninth St
> Kansas City, MO 64106

9. CAUTION: You must include in this petition all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

10. CAPITAL CASES: If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.



IN THE 15th JUDICIAL CIRCUIT COURT, Lafayette County, MISSOURI

| Judge or Division: | Case Number: 15V010000051 | FILED |
|---|---|---|

| Plaintiff/Petitioner: William D. Cone | Appellate Number: WD70432 | ☐ Filing as an Indigent |
|---|---|---|
| | Court Reporter: Karla Cary | ☐ Sound Recording Equipment |
| | Reporter's Telephone: 660-259-6101 | Number of Days of Trial: 1 |
| vs. | Date of Judgment/Sentence: December 19, 2007 (Attach a copy) | Date Post Trial Motion Filed: None |
| Defendant/Respondent: State of Missouri | Date Ruled Upon: December 19, 2007 | Date Notice Filed: |

FILED DEC 3 0 2008
DEANA AVERSMAN
LAFAYETTE CO. CIRCUIT CLERK

(Date File Stamp)

## Notice of Appeal
☐ Supreme Court of Missouri    Court of Appeals: ☑ Western    ☐ Eastern    ☐ Southern

Notice is given that _____William D. Cone_____ appeals from the judgment/decree entered in this action on ___December 19, 2007___ (date).

**Complete if Appeal is to Supreme Court of Missouri**
Jurisdiction of the Supreme Court is based on the fact that this appeal involves:
(Check appropriate box)
☐ The validity of a treaty or statute of the United States    ☐ The title to any state office in Missouri
☐ The punishment imposed is death    ☐ The construction of the revenue laws of Missouri
☐ The validity of a statute or provision of the Constitution of Missouri

If the basis of jurisdiction is validity of a United States treaty or statute, the validity of a Missouri statute or Constitutional provision or construction of Missouri revenue laws, a concise explanation, together with suggestions, if desired, is required. This may be filed as part of or with this notice of appeal or, in the alternative, may be filed within ten days after the notice of appeal is filed by filing it directly with the Clerk of the Supreme Court. See Rule 81.08(b) and (c) and Rule 30.01(f) and (g).

| Appellant's Attorney/Bar Number Rebecca L. Kurz 40451 | Respondent's Attorney(s)/Bar Number(s) (If multiple, list all or attach additional sheets) Shaun Mackelprang |
|---|---|
| Address 142 N. Cherry Street | Address Missouri Attorney General's Office, Supreme Court Building P.O. Box 899, Jefferson City, MO 65102 |
| Telephone 913-829-6336    Fax 913-829-6446 | Telephone 573-751-3321    Fax 573-751-0774 |
| Appellant's Name William D. Cone | Respondent's Name State of Missouri |
| Address Crossroads Correctional Center | Address |
| Telephone 816-632-2727 | Telephone |

Brief Description of Case

Appeal from the denial of Rule 29.15 post-conviction motion.

| Date of Appeal Bond | Amount of Bond | ☐ Bond Attached |
|---|---|---|

| Signature of Attorney or Appellant _Rebecca L. Kurz #40451_ | Date December 29, 2008 |
|---|---|

OSCA (1-08) CR120                    1 of 2                    Rules 30.01, 81.08, 512.070 RSMo

Local rules may require supplemental documents to be filed. Please refer to the applicable rule for the district in which the appeal is being filed and forward supplements as required.

## Certificate of Service

I certify that on ___December 29, 2008___ (date), I served a copy of the notice of appeal on the following parties, at the following address(es), by the method of service indicated.

Mr. Chris Koster

Missouri Attorney General

Supreme Court Building

207 W. High Street

Jefferson City, MO 65102

_Rebecca L. Kurz_
_____
Appellant or Attorney for Appellant

## Directions to Clerk

Serve a copy of the notice of appeal in a manner as prescribed by Rule 43.01 on the attorneys of record of all parties to the judgment other than those taking the appeal and on all other parties who do not have an attorney. (A copy of the notice of appeal is to be sent to the Attorney General when the appeal involves a felony.) Transmit a copy of the notice of appeal to the clerk of the Supreme Court/Court of Appeals. If a party does not have an attorney, mail the notice to the party at his/her last known address. Clerk shall then fill in the memorandum below. (See Rules 81.08(d) and 30.01 (h) and (i).) Forward the docket fee to the Department of Revenue as required by statute.

## Memorandum of the Clerk

I have this day served a copy of this notice by ☑ regular mail ☐ registered mail ☑ certified mail ☐ facsimile transmission to each of the following persons at the address stated below. If served by facsimile, include the time and date of transmission and the telephone number to which the document was transmitted.

Rebecca L. Kurz
142 N. Cherry St
Olathe, KS 66061

Terence G. Lord,
Court of Appeals - Western District
1300 Oak Street
Kansas City, MO 64106-2970

Office of Attorney General
PO Box 899
Jefferson City, Missouri 65102

I have also transmitted a copy of the notice of appeal to the clerk of the

☐ Supreme Court        ☐ Court of Appeals, _____ District

☑ Docket fee in the amount of $ 70.00 has been received by this clerk which will be disbursed as required by statute.

☐ A copy of an order granting leave to appeal as indigent.

December 31, 2008
_____
Date

_Penny Sunnerlin_
_____
Clerk

Case 4:11-cv-00724-GAF   Document 1   Filed 07/18/11   Page 21 of 55

# IN THE CIRCUIT COURT OF LAFAYETTE COUNTY, MISSOURI

WILLIAM D. CONE,

        Movant,

v.

STATE OF MISSOURI,

        Respondent.

)
)
)
)
)
)
)
)
)

Case No. 15V010000051

RECEIVED

DEC 2 6 2007

MO. ATTORNEY GENERAL

## Order and Judgment/
## Findings of Fact and Conclusions of Law
## Denying Cone's Rule 29.15 Motion After Evidentiary Hearing

Before this Court is William Cone's amended motion for post-conviction relief under Supreme Court Rule 29.15. For the reasons that follow, this Court will deny the motion.

### Findings of Fact

1. Cone was charged in Howell County, Missouri, with thirteen counts of first degree deviate sexual assault in violation of RSMo. § 566.040 and six counts of first degree sexual assault in violation of RSMo. § 566.070.

2. Upon stipulation by the parties, venue was changed to the Circuit Court of Lafayette County, Missouri.

3. A jury found Cone guilty on all nineteen counts.

4. The trial court sentenced Cone to seven years in the custody of the Missouri Department of Corrections on each count, all sentences to run consecutive.

5. Cone timely appealed his conviction, and the Missouri Court of Appeals, Western District, affirmed. The Court of Appeals found there was sufficient evidence from the State's expert witnesses to show that Cone's victims were mentally

incapacitated during their sexual contact with Cone due to Cone's manipulation of his victims through the use of psychotropic medications, involuntary commitment, and transference phenomena. *State v. Cone*, 3 S.W.3d 833 (Mo. App. W.D. 1999).

6. Cone moved for post-conviction relief on grounds of ineffective assistance of trial counsel pursuant to Missouri Supreme Court Rule 29.15. This Court denied the motion.

7. Cone filed a motion to reopen his Rule 29.15 proceeding due to abandonment by his first Rule 29.15 counsel. This Court granted the motion.

8. Cone then filed a second amended Rule 29.15 motion in which he claimed that counsel was ineffective for failing to challenge his prosecution as a violation of the *ex post facto* clause, failing to call an expert witness to testify on Cone's behalf, and failing to challenge the affidavit of probable cause that initiated Cone's prosecution.

9. This Court conducted an evidentiary hearing on the second amended Rule 29.15 motion. Cone was the sole witness at the hearing. This Court finds that Cone was not a credible witness due to his demeanor and his failure to remember or acknowledge virtually any evidence contrary to his claims. This court also received the deposition of Dr. William Logan into evidence. Cone did not call his trial attorney as a witness.

### Conclusions of Law

Each of Cone's three claims assert ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part test for

overturning a conviction based upon an ineffective assistance claim. A convicted defendant must demonstrate both that counsel's representation fell below the skill and diligence of a reasonably competent attorney and that he was prejudiced by counsel's actions. *Id.* at 687. In order to show prejudice, Cone must show a reasonable probability that the result of the trial would have been different. *Id.*

Cone did not call his trial attorney, Fred Martin, as a witness in the evidentiary hearing or present his testimony through a deposition. "Counsel is presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment." *State v. Jones*, 979 S.W.2d 171, 180 (Mo. 1998). Because Martin did not testify in this proceeding, this Court will presume that Martin's decisions were strategic and reasonable.

The only other evidence presented was through movant and Dr. William Logan. This Court finds that Cone was not a credible witness and Dr. Logan cannot comment on why counsel acted as he did because he was not involved in the case at trial. Thus, Cone has produced no credible evidence to rebut the presumption that counsel's decisions were both strategic and reasonable. His claims fail for this reason alone. Rule 24.035(i).

### Claim I

Cone contends he was denied effective assistance of counsel because his attorney failed to challenge his prosecution as violating the *ex post facto* clause of the U.S. Constitution. Cone alleges he did not have notice that his actions were illegal and that the trial court unjustifiably expanded the definition of the term "incapacitated" beyond its ordinary scope. This claim is without merit.

Cone asserts that his conviction under RSMo § 566.040 represents an *ex post facto* application of that statute to the facts of his case. He is wrong. There was no retroactive change in the *prima facie* elements of the crime, nor was there a modification of the facts required to prove Cone's guilt. The Supreme Court has long held that any legal alteration that does "not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt," is not a violation of the *ex post facto* clause. *Hopt v. Utah*, 110 U.S. 574, 590 (1884).

Cone cites *Bouie v. City of Columbia*, 378 U.S. 347 (1964), as authority for his proposition. The central holding in *Bouie* is that courts cannot, by judicial construction, circumvent the due process concepts of notice, foreseeability, and fair warning by so unexpectedly and indefensibly expanding the scope of a criminal statute that a person's previously legal conduct is rendered criminal. *Id. Bouie's* narrow holding is not applicable to the case at bar. The trial court left the substance of the relevant statutes (i.e. RSMo §§ 566.040, 566.070) unchanged; it neither expanded their scope, nor amended their elements. This court merely read the term "incapacitated" to include the novel facts of this case. Criminal statutes cannot and do not set out every conceivable way to commit a crime. Here, Cone's actions were merely a novel way to commit the charged offense.

In *Rose v. Locke*, 423 U.S. 48 (1975), the Supreme Court examined the judicial interpretation of vague language in state criminal statutes for *ex post facto* clause problems. The Court observed that the "prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision." *Id.* at 49. Indeed, said the Court, a great number of statutes are

inherently vague in that "most English words and phrases [contain] uncertainties." *Id.* at 50 (quoting *Robinson v. United States*, 324 U.S. 282, 286 (1945). In this case, the open-ended nature of § 566.040, which did not set out a complete list of ways to commit the charged crimes, does not amount to a violation of the *ex post facto* clause.

Cone claims that he did not realize it was criminal for him to use his position as a psychotherapist to render his patients dependent upon him, and then parlay that dependence into a deviate sexual relationship to which his patients could not consent because of his prescribed course of "treatment." Cone asserts that his victims were not incapacitated when they engaged in a sexual relationship with him, and points to their ability to function in society as proof. Cone correctly states that they drove cars, performed jobs, raised families, attended college, and had normal intellects. (Tr. 353, 365-67, 390, 502-03, 532, 606, 737-45). Whereas these facts may satisfy the *civil* definition of incapacitated, they are immaterial to a determination of capacity under the relevant *criminal* statutes. RSMo. § 556.061(13) defines incapacity as a mental condition that renders a person unable to appraise the nature of her conduct, or express her unwillingness to take part in it. The evidence at trial showed that both of Cone's victims met this standard due to Cone's use of prescription drugs and "treatment" designed to break down the victims' wills. *State v. Cone*, 3 S.W.3d 833 (Mo. App. W.D. 1999).

Cone further contends that the *ex post facto* clause is violated in this case because the courts definition of "incapacity" differs from "common law precedent by distorting and expanding the definition of [the word]." (29.15 motion p. 2). The Supreme Court rejected this very argument in *Rogers v. Tennessee*, 532 U.S. 451 (2001). The Court held that "in the context of common law doctrines . . . there often arises a need to clarify or

even to reevaluate prior opinions as new circumstances and fact patterns present themselves. Such judicial acts, whether they be characterized as 'making' or 'finding' law, are a necessary part of the judicial business . . ." *Id.* at 461. The Court further held that applying *ex post facto* principles in the context of common law interpretation would "unduly impair the incremental and reasoned development of precedent" that is imperative to the proper functioning of the common law. *Id.* Thus, Cone's claim that the trial and appellate court's interpretation of "incapacitated" is invalid because it breaks with common law precedent fails.

Finally, this case is analogous to *Knutson v. Brewer*, 619 F.2d 747 (8th Cir. 1980). In that case the defendant argued that his conviction violated the *ex post facto* clause, and by extension his due process rights, because it was based on a set of facts that had not previously been read into the definition of particular statutory language. In deciding the question the Eighth Circuit held that so long as a statutory definition is interpreted in such a way that it does not "do violence to the ordinary understanding of the English language" it does not violate the fourteenth amendment's due process guarantees. *Id.* at 750. Similarly, since by its terms the *ex post facto* clause applies only to legislation, it is only implicated in cases of judicial interpretation of statutes in those instances where a court's construction of a statute is so unexpected that it violates due process. *Id.* at 751. And "[T]he Due Process Clause does not automatically guarantee that a defendant will receive the benefit of the narrowest verbally possible construction of a previously unexplicated phrase in a state criminal statute." *Id.*

Like the defendant in *Knutson*, Cone is not entitled to an overly narrow construction of the word "incapacitated" simply because it would help him get out of jail.

The definition of "incapacitated" as stated in RSMo. § 556.061(13) is plainly written to include those persons who, like Cone's victims, are unable to appreciate the nature of their actions, or unable to communicate their unwillingness to participate in a given act. That definition reads the same today as it did the day Cone stripped his victims of their ability to resist him, plied them with drugs and alcohol, and forced them into a deviate sexual relationship under the guise of "regression therapy." A plain reading of RSMo. § 556.061(13), accompanied by the facts of this case, would lead an average person of normal intelligence, including Cone, to conclude his actions were against the law. As such it cannot be said that the court's definition did "violence to the ordinary understanding" of the word 'incapacitated,' nor did it violate the *ex post facto* clause.

### Claim II

Cone asserts that trial counsel was ineffective for failing to introduce testimony from an expert medical witness to rebut the State's evidence showing that Cone's victims were incapacitated. Cone's second claim fails as it cannot meet either of *Strickland's* threshold requirements.

Under *Strickland*, Cone must first show that counsel failed to provide "professionally competent assistance." 466 U.S. at 690. In Missouri, "counsel has a duty . . . to make a reasonable investigation of possible mitigating evidence or to make a reasonable decision [to proceed without it]." *Sidebottom v. State*, 781 S.W.2d 791, 797 (Mo. 1989). But "defense counsel is not ineffective for failing to shop around to find an expert witness who will testify more favorably" for the defense. *State v. Kenley*, 952 S.W.2d 250, 269 (Mo. 1997). Cone's attorney fulfilled his professional responsibility.

This Court finds that trial counsel made a significant effort to find expert witnesses to testify on Cone's behalf. (Tr. 69-72). In fact, trial counsel "followed up" with at least four psychiatrists in the months leading up to trial, and made contact with a number of others, in an effort to identify one who would testify favorably for the defense, yet he was unable to find a single one who would do so. *Id.* Following this unsuccessful search, Cone's counsel made the strategic decision to proceed to trial without an expert. *Id.* Counsel's investigation was reasonable. He contacted multiple doctors and could not find one who would testify. Counsel cannot be faulted for the doctors' refusal to participate in this case despite counsel's best efforts.

The appropriate evaluative standard of competence under *Strickland* is not whether counsel made every conceivable effort to find an expert witness, but rather whether counsel's conduct was objectively reasonable under generally accepted professional practices. *Strickland*, 466 U.S. at 688. Moreover, there is a strong presumption that trial counsel's assistance was competent, and the burden falls heavily on Cone to demonstrate by a preponderance of the evidence that the assistance was deficient. *Deck v. State*, 68 S.W.3d 418, 425-26 (Mo. 2002). Cone cannot satisfy *Strickland*'s performance prong.

Cone cannot satisfy *Strickland*'s prejudice prong either. He asserts that Dr. William Logan, a psychiatric expert in the field of victim incapacitation, could have offered testimony to rebut the state's evidence that Cone's victims were unable to consent to, or reject, his sexual advances. (29.15 motion p.14). Cone argues that if trial counsel had found Dr. Logan prior to trial, and called him to testify, the trial outcome would have been different. *Id.* at 16.

Cone argues that Dr. Logan, if called at trial, would have testified that Cone's victims were not incapacitated within the meaning of Missouri's statutes. (29.15 motion p. 12). But Dr. Logan's testimony during his March 9, 2007, deposition does not support such a claim. Dr. Logan testified in his deposition that there is no generally accepted definition of "incapacitated" in the mental health field. (Logan Depo. p. 20, 23). Rather, it is a legal term of art defined by statute. (*Id.* p. 22). And in his work as a forensic psychiatrist he typically seeks to define the term "incapacitated" by looking to the statutory definition. (*Id.*). As discussed above the legal definition of "incapacitated" under Missouri's criminal code is the inability to appraise the nature of ones conduct, or express an unwillingness to take part in it that conduct. RSMo. §556.061(13). Thus, the only question at trial was whether or not Cone's victims fit that definition. And in the closing pages of Dr. Logan's deposition he concedes that a person who is made dependent on drugs, as the victims in this case were, can be rendered "obtunded or non-functional." (*Id.* at 46). In other words, they could be made incapacitated within the meaning of Missouri's criminal code. Thus, Dr. Logan's testimony cannot be said to be sufficiently different from that of the state's experts to create a reasonable likelihood that Cone's trial would have turned out differently had Dr. Logan been able to testify. Cone cannot show prejudice and his second claim fails.

### Claim III

Cone's third claim is that his counsel was ineffective because he failed to request a *Franks*[1] hearing to challenge the prosecutor's affidavit of probable cause that initiated proceedings against Cone. He reasons that if the affidavit had been challenged it would

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

have been found deficient, no arrest warrant would have issued, no prosecution commenced, and no conviction returned. This claim is without merit because Cone cannot show *Strickland* prejudice.

Even if Cone's counsel had requested a *Franks* hearing and been successful in challenging the affidavit of probable cause and the arrest, it hardly follows that the state's prosecution of Cone would have stopped dead in its tracks. Rather the state would have simply procured a new arrest warrant and proceeded with the prosecution. And the suppression, or not, of the affidavit of probable cause would have had no effect on the substance of the state's case; no evidence against Cone was gathered as a result of the arrest and therefore no evidence would have been suppressed. The trial itself would have proceeded exactly as it did with the same evidence. The only change would have been the date of Cone's arrest. Therefore, Cone cannot demonstrate *Strickland* prejudice and his third claim fails.

### Conclusion

For the forgoing reasons, this Court denies Cone's Rule 29.15 motion for post-conviction relief in its entirety and enters judgment on all claims in favor of the state of Missouri.

Date: December 19, 2007

Dennis A. Rolf, Circuit Judge

# IN THE MISSOURI COURT OF APPEALS

## WESTERN DISTRICT

WILLIAM D. CONE,                    )
                                    )
          APPELLANT,                )        WD70432
                                    )        CIR. CT. 05V010000051
VS. (LAFAYETTE)                     )
                                    )
STATE OF MISSOURI,                  )
                                    )
          RESPONDENT.               )

## O R D E R

NOW ON THIS DAY, the Court having considered the Appellant's Motion for Leave to File Notice of Appeal Out of Time filed in Case No. 05V010000051 in the Circuit Court of Lafayette County, Missouri, and being fully advised in the premises, and the Court finding that due notice of said motion was given to the adverse parties and that Appellant is a poor person, said motion is sustained;

IT IS THEREFORE ORDERED that the Clerk of the Circuit Court Lafayette County, Missouri, permit the Appellant to file a Notice of Appeal in **forma pauperis**, within ten (10) days from the date of this Special Order, all in accordance with Supreme Court Rule 30.03.

Dated this 23rd day of December, 2008.

RONALD R. HOLLIGER
ACTING CHIEF JUDGE

CC:       Rebecca Lynn Kurz 913-829-6446
          Shaun J. Mackelprang
          Department of Civil Records



NOTICE
THIS OPINION IS NOT FINAL UNTIL
ALL POST HANDDOWN MOTIONS HAVE
BEEN DISPOSED OF AND THE MANDATE
ISSUED AND RECEIVED.

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

WILLIAM D. CONE,

   Appellant,

v.

STATE OF MISSOURI,

   Respondent.

)
)
)
)
)
)
)
)
)
)
)

WD70432

Opinion Filed: April 27, 2010

### APPEAL FROM THE CIRCUIT COURT OF LAFAYETTE COUNTY, MISSOURI
The Honorable Dennis A. Rolf, Judge

Before Division Two: Joseph M. Ellis, Presiding Judge, Victor C. Howard, Judge
and James E. Welsh, Judge

   William D. Cone appeals from the denial of his Rule 29.15 motion for post-conviction relief following an evidentiary hearing. For the following reasons, the judgment is affirmed.

   Cone practiced psychiatry in West Plains, Missouri, from 1979 through 1994, when he lost his license, at the age of 70, after it was discovered that he had been having sexual relations with two of his patients. Also as a result of those patients' allegations, on January 1997, Cone was charged with six counts of first degree sexual assault, § 566.040, and thirteen counts of first degree deviate sexual assault, § 566.070. Following a jury trial, Cone was found guilty as charged and was sentenced to

consecutive terms of seven years imprisonment on each of the nineteen counts. His convictions and sentences were affirmed by this Court on direct appeal. *State v. Cone*, 3 S.W.3d 833, 845 (Mo. App. W.D. 1999).

Cone filed a motion for post-conviction relief under Rule 29.15 that was subsequently denied. On December 9, 2005, newly retained counsel filed a motion on Cone's behalf asking the motion court to find that Cone had previously been abandoned by post-conviction counsel and for leave to file an amended Rule 29.15 motion. After the State stipulated that Cone had been abandoned by counsel, the motion court entered its order permitting Cone to file an amended post-conviction motion.

In his amended Rule 29.15 motion, Cone alleged that trial and appellate counsel were ineffective for failing to challenge his prosecution as violating the due process and *ex post facto* clauses of the United States and Missouri constitutions. He also claimed that trial counsel was ineffective for failing to consult with and call a psychiatrist to rebut the expert testimony presented by the State. Finally, Cone argued that trial counsel was ineffective for failing to challenge the affidavit of probable cause. Following an evidentiary hearing, the motion court denied Cone's motion. Cone brings three points on appeal from that decision.

"Our review of the motion court's denial of a Rule 29.15 motion is limited to determining whether the findings and conclusions of the motion court are clearly erroneous." *Stiers v. State*, 229 S.W.3d 257, 260 (Mo. App. W.D. 2007) (citing Rule 29.15(k)). "A judgment is clearly erroneous when, in light of the entire record, the court

is left with the definite and firm impression that a mistake has been made." *Storey v. State*, 175 S.W.3d 116, 125 (Mo. banc 2005) (internal quotation omitted).

"To prevail on an ineffective assistance of counsel claim, [Appellant] must show that (1) trial counsel's performance was deficient in that he failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances and (2) the deficient performance prejudiced [Appellant]." *State v. Rich*, 950 S.W.2d 337, 339 (Mo. App. W.D. 1997) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). "To establish ineffectiveness, a defendant must show that counsel's representation fell below an objective standard of reasonableness." *Storey*, 175 S.W.3d at 125 (internal quotation omitted). "'We presume counsel to be competent, requiring proof to the contrary by a preponderance of the evidence.'" *Stiers*, 229 S.W.3d at 260 (quoting *State v. Taylor*, 929 S.W.2d 209, 224 (Mo. banc 1996)). "As to prejudice, a claimant must demonstrate prejudice by showing that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *James v. State*, 222 S.W.3d 302, 304 (Mo. App. W.D. 2007) (internal quotation omitted). "Appellant must establish both the performance and prejudice prongs of this test in order to prevail on a claim of ineffective assistance, and if he fails to satisfy either prong, we need not consider the other." *Id.*

In his first point, Cone claims that the motion court clearly erred in determining that trial and appellate counsel were not ineffective for failing to challenge his prosecution as violating his right to due process. He relies on the principle that "due

3

process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 1225, 137 L.Ed.2d 432 (1997). He argues that the definition of incapacitated applied in his case was contrary to that adopted in the common law and that he had no notice or fair warning that his actions were criminal. He further claims that the statutes failed to give fair warning of the conduct they prohibited.

Under the applicable statutory language, "[a] person commits the crime of sexual assault in the first degree if he has sexual intercourse with another person to whom he is not married and who is incapacitated." *Cone*, 3 S.W.3d at 840 (quoting *§ 566.040.1*, RSMo 1986). Similarly, "[a] person commits the crime of deviate sexual assault in the first degree if he has deviate sexual intercourse with another person to whom he is not married and who is incapacitated." *Id.* (quoting *§ 566.070*, RSMo 1986). At trial Cone admitted to having performed the alleged sexual acts but challenged whether the victims were incapacitated because of their mental conditions.

On appeal, Cone contends that his patients did not share the same characteristics as the victims that had previously been deemed incapacitated under the common law and that he could not have reasonably known that the patients were legally incapacitated under the existing law when he had sexual intercourse with them. He argues that prior cases had established incapacity through evidence of impaired reality, delusional thinking, or severe developmental disability. He claims that trial and appellate counsel should, therefore, have challenged his prosecution as violating due

4

process because he could not have reasonably foreseen that his actions would be deemed criminal.

The bulk of the cases relied upon by Cone for the treatment of when a woman is incapacitated predate the enactment of § 556.061(13), the applicable statutory definition of "incapacitated."[1] The only case cited by Cone applying § 556.061(13) utilized the same definition applied by the trial court in Cone's case and found the evidence presented therein sufficient to support the defendant's conviction. *See State v. Buck*, 724 S.W.2d 574 (Mo. App. W.D. 1986). *Buck* offers no guidance related to the factual scenario presented in the case at bar.

At the time Cone had sexual intercourse with the victims, "incapacitated" was defined by statute as "that physical or mental condition, temporary or permanent, in which a person is unconscious, unable to appraise the nature of his conduct, or unable to communicate unwillingness to an act." *§ 556.061(13)*, RSMo 1986. At trial, the State presented three psychiatric experts that testified that both victims were incapacitated "in that they were unable to appraise the nature of their conduct and were unable to communicate their unwillingness to act." The jury found Cone guilty after being instructed, consistent with the statutory language, "that it must find and believe from the evidence beyond a reasonable doubt that, at the time, the patient was, because of a mental condition, unable to appraise the nature of her conduct or unable to communicate her unwillingness to engage in such conduct." *Cone*, 3 S.W.3d at 840.

---

[1] Cone cites to *State v. Cunningam*, 12 S.W. 376 (Mo. 1889); *State v. Williams*, 51 S.W. 88 (Mo. 1899); *State v. Warren*, 134 S.W. 522 (Mo. 1911); and *State v. Schlicter*, 173 S.W. 1072 (Mo. 1915).

5

On direct appeal, this court determined that "there was substantial evidence from which a jury could find that [the victims] did not appreciate the nature of their conduct in committing sexual acts with the defendant" and "were unable to understand their conduct was sexual in nature." *Id*. at 842.

Cone was convicted under the language of the statutes in effect at the time he committed his crimes. The trial court did not overrule existing law or otherwise expand the statutory language. As noted by the motion court, the "definition reads the same today as it did the day Cone stripped his victims of their ability to resist him, plied them with drugs and alcohol, and forced them into a deviate sexual relationship under the guise of 'regression therapy.'" Any claim of a breach of due process was meritless, and therefore, the motion court did not err in finding that neither trial counsel nor appellate counsel was ineffective for failing for bring such a claim. Point denied.

In his second point, Cone claims that the motion court should have found that counsel was ineffective for failing to call an expert in psychology or psychiatry to rebut the State's evidence that the victims were incapacitated. He claims that a reasonably competent attorney would have located and called such an expert.

"To show ineffective assistance by failing to locate and present expert witnesses, Movant has the burden to show such experts existed at the time of trial, that they could have been located through reasonable investigation, and the testimony would have benefited the defense." *Williams v. State*, 226 S.W.3d 871, 873 (Mo. App. S.D. 2007) (internal quotation omitted).

6

The record reflects that, during a pre-trial hearing thirteen days before trial, trial counsel informed the court that, while he felt the defense would benefit from expert testimony, he had contacted ten to twelve psychiatrists and visited the Menninger Clinic in Topeka, Kansas, but had been unable to find an expert willing to testify in the case. Counsel also testified that Cone had unsuccessfully attempted to convince some of his colleagues to testify on his behalf. He further noted Cone's inability to pay more than a couple thousand dollars to an expert. The trial court commented that counsel appeared to have done all he could do with regard to obtaining an expert to testify on Cone's behalf.

The morning of Cone's trial, Cone told counsel that he had received a message from a third party that an expert in Topeka, Dr. Gilbert Parks, was willing to testify in the case on Wednesday of that week. Counsel stated that he had not spoken with the expert and did not know what his testimony would be. Cone also indicated that he had not spoken with the expert and had not seen his curriculum vitae. The State objected to the endorsement of the witness on the day of trial, and the court sustained that objection.

At the evidentiary hearing, Cone entered into evidence the deposition of Dr. William Logan. He claimed that a reasonably competent attorney would have located Dr. Logan or a similar expert to testify on his behalf.

Following the Rule 29.15 evidentiary hearing, the motion court found that trial counsel had made significant efforts to find expert witnesses to testify on Cone's behalf. The court determined that counsel had conducted a reasonable investigation for an

7

expert and had acted in a competent manner in deciding to proceed to trial at the initial pretrial hearing.

The motion court's conclusion that counsel acted competently is not clearly erroneous. Counsel made a diligent but unsuccessful effort to obtain an expert to testify at trial. Counsel is not required to continue consulting experts until he or she has found one that will support the defendant's case. *State v. Ashley*, 940 S.W.2d 927, 933-34 (Mo. App. W.D. 1997). The mere fact that the defendant was able to later obtain an expert that would have provided an opinion supporting the defense does not establish that counsel could have found such an expert at the time of trial or that they were ineffective for failing to do so. *Id.* "While defense counsel could have continued to consult additional experts in the hope of finding one that might support [the defense], counsel is not required to seek out an expert who might provide more helpful testimony." *Worthington v. State*, 166 S.W.3d 566, 575 (Mo. banc 2005). Point denied.[2]

In his final point, Cone claims that the motion court erred in determining that counsel was not ineffective for failing to challenge the affidavit of probable cause used to support his arrest warrant. Cone asserts that the affidavit contained statements made with reckless regard for the truth because they were based on expert opinions not

---

[2] Though not raised in his post-conviction motion or in his point relied on, Cone additionally attempts to argue that the motion court should have found counsel was ineffective for failing to make a motion for a continuance on the day of trial to allow Dr. Parks to testify on his behalf. Even were this issue preserved for appellate review, it would be wholly without merit. Cone did not present any evidence at the motion hearing establishing that Dr. Parks had actually been available to testify at trial, what his credentials as an expert were, or what Dr. Parks's testimony would have been. The motion court had no reason to consider any claim whatsoever related to Dr. Parks.

8

widely accepted in the field of psychiatry and that the arrest warrant could have successfully been challenged under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Specifically, Cone challenges the statement made by the special prosecutor in the affidavit that he had reviewed the reports of the psychiatric examinations of the victims by three doctors, each of whom had opined that the victim that they examined had been unable to appreciate the nature of their conduct in engaging in sexual activities with Cone and was unable to communicate her unwillingness to engage in the sexual acts requested by Cone. Cone claims the prosecutor recklessly relied upon those comments because he knew the doctors were applying a standard of incapacity contrary to existing case law.

In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court held that:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.* at 155-56, 98 S.Ct. at 2676. Even assuming that *Franks* applies to challenges to arrest warrants as well as search warrants, Cone has failed to identify any evidence that would have needed to be suppressed as fruit of that arrest warrant. Accordingly, he has

9

not established any prejudice from counsel's failure to make a *Franks* challenge to the affidavit supporting his arrest warrant.

Moreover, Cone's *Franks* claim is based primarily upon an assertion that the statements of the doctors that the special prosecutor relied upon were false. "Merely to allege that the affidavit contained false information does not suffice. The defendant must also show that the **affiant** knew of the falsity or submitted the affidavit with reckless disregard for its truth or falsity." *State v. Leisure*, 772 S.W.2d 674, 683 (Mo. App. W.D. 1989) (overruled on other grounds in *Joy v. Morrison*, 254 S.W.3d 885, 888 n.7 & 888-89 (Mo. banc 2008)) (emphasis added). "Although challenges to the truthfulness of such affidavits are permitted . . ., the deliberate falsity whose impeachment is permitted is only that of the affiant, not of any nongovernmental informant." *State v. Gilmore*, 665 S.W.2d 25, 29 (Mo. App. E.D. 1984).

As to his claim that the prosecutor recklessly relied upon the doctors' opinions because he knew the doctors were applying a standard of incapacity contrary to existing case law, as noted *supra*, the applicable definition of "incapacitated" is set forth in § 556.061(13). Nothing in the affidavit indicates that the doctors or the special prosecutor applied a contrary definition.

The motion court properly found that the failure to file a motion to suppress under *Franks* did not constitute ineffective assistance of counsel. Point denied.

The judgment is affirmed.

All concur.

Joseph M. Ellis, Judge

10

# IN THE SUPREME COURT OF MISSOURI

| | | |
|---|---|---|
| WILLIAM D. CONE, | ) | Circuit Court No. 15V010000051 |
| | ) | |
| Appellant, | ) | Court of Appeals No.  WD70432 |
| | ) | |
| vs. | ) | Supreme Court No. _____ |
| | ) | |
| STATE OF MISSOURI, | ) | Court of Appeals, Western District |
| | ) | |
| Respondent. | ) | Circuit Court for Lafayette County |

## APPLICATION FOR TRANSFER

Is transfer sought prior to opinion _____ or after opinion _____X____

The date the record on appeal was filed:       March 30, 2009

The date the Court of Appeals opinion was filed:       April 27, 2010

The date the motion for rehearing was filed:       May 12, 2020

The date the motion for rehearing was ruled on:       June 1, 2010

| **Party** | **Attorney** |
|---|---|
| William D. Cone - Movant/Appellant | Rebecca L. Kurz |
| | Morgan Pilate LLC |
| | 142 N. Cherry Street |
| | Olathe, KS 66061 |
| State of Missouri - Respondent | Daniel N. McPherson |
| | Office of the Attorney General |
| | P.O. Box 899 |
| | Jefferson City, MO 65102 |

## QUESTIONS PRESENTED

This case presents the following questions of general interest and importance:

1.    What analysis should a Missouri trial or appellate court apply in deciding whether an interpretation of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue" under *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964) and *Rogers v. Tennessee*, 532 U.S. 451 (2001)?

2.    Would a statute criminalizing sexual conduct with a person who is "unable to appraise the nature of [her] conduct" due to a mental condition provide a psychiatrist fair warning that consensual sex with a patient is a crime, or would criminalizing such behavior require a novel construction of the statute not contemplated by any prior judicial decision?

1

## I. Factual Background

From November, 1993, to January, 1994, Dr. William Cone, a psychiatrist, had consensual sexual relationships with two of his female patients. He was charged and convicted of six counts of first degree sexual assault, Section 566.040, RSMo 1989, and thirteen counts of first degree deviate sexual assault, Section 566.070, RSMo 1989. At the time the sexual conduct occurred, these statutes criminalized sexual intercourse and deviate sexual intercourse with a person who was "incapacitated." The term "incapacitated" was defined as "that physical or mental condition, temporary or permanent, in which a person is unconscious, unable to appraise the nature of his conduct, or unable to communicate unwillingness to an act." Section 556.061(13), RSMo Cum. Supp. 1993.

At trial, the state called three mental health experts to testify that the two women were incapacitated. There was no evidence that either woman suffered psychotic breaks or an impaired sense of reality. Both women were of normal intelligence and were seeking college degrees (Tr. 353, 387, 501-502, 738-743). They performed normal adult functions of daily life, such as driving vehicles, working, and raising families (Tr. 502-503, 679, 737-745). They testified about the acts and were aware of their sexual nature (Tr. 422, 479-480, 686-687). Both women knew that performance of the sexual acts bore possible consequences. Both women were mothers and certainly understood that pregnancy is a possible consequence of sex (Tr. 502, 679). Both women felt guilty about

2

their relationship with Dr. Cone, indicating their understanding of the moral implications of sex (Tr. 454, 567-568). One of the women referred to the relationship as an "affair" and acknowledged that she was "cheating" on her husband (Tr. 454). The other woman testified that the sexual conduct with Dr. Cone was "to satisfy his needs" (Tr. 494).

In spite of all of this evidence, the state's experts deemed the women unable to appraise the nature of their conduct. The state's experts theorized that the women were incapacitated because they were dependent and vulnerable, and they thought the sexual conduct was part of their treatment (Tr. 379, 400, 548, 603).

In a motion for post-conviction relief pursuant to Rule 29.15, Dr. Cone contended that his trial and appellate counsel rendered ineffective assistance of counsel for failing to challenge the convictions as violating his due process right to fair warning of what constituted criminal conduct under the statutes. The Rule 29.15 motion was denied, and the appellate court affirmed the motion court's judgment.

## II.    Legal Argument

This Court should accept transfer of this case, because the opinion of the Missouri Court of Appeals, Western District fails to articulate or apply any standard for analyzing whether a statute failed to provide fair warning. The court concluded – with no analysis whatsoever – that Dr. Cone's due process rights were not violated because "[t]he trial court did not overrule existing law or otherwise expand the statutory language" (Opinion at 6). The court embraced the motion court's observation that the statutory definition of

3

"incapacitated" reads the same today as it did when the offenses were purportedly committed (Opinion at 6). Without undertaking any analysis as to the plain and ordinary meaning of the statutory language, the appellate and motion courts reasoned that *the mere existence of the statute* at the time of the alleged offenses provided fair warning. That is no standard at all.

In *United States v. Lanier*, the Supreme Court said that in determining whether a statute provides fair warning, "the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." 520 U.S. 259, 267 (1997). The Court of Appeals, Western District did not analyze whether Section 556.061(13), RSMo Cum. Supp. 1993, either standing alone or as construed by courts, made it clear that the consensual sexual conduct between Dr. Cone and his patients was criminal.

Both the motion court and the appellate court made it clear that they found Dr. Cone's conduct offensive to say the least, but they gave no consideration to whether his conduct *actually constituted a crime* under the statute.

A.    **Statutory Construction**

Statutes must be strictly construed and any ambiguity must be resolved so as to ensure fair warning by applying the statute only to conduct clearly covered. *United States v. Lanier*, 520 U.S. 259, 266 (1997). "[D]ue process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial

4

decision has fairly disclosed to be within its scope." *Id.*

When an appellate court interprets a statute, it is required to determine the General Assembly's intent by giving the statute its plain and ordinary meaning. *Andrews v. State*, 282 S.W.3d 372, 377 (Mo. App. W.D. 2009). The plain and ordinary meaning of the statute is that a woman will be deemed incapacitated if she is unable to understand that she was having sexual intercourse. Neither woman was so mentally impaired that she was unconscious, did not know she was having sexual intercourse, or was unable to say that she did not want to have sexual intercourse. The statutory language criminalizes sexual conduct with a person who is unable to act, comprehend, or communicate. The prosecution and the courts deemed the women incapacitated – not because they were unconscious, could not comprehend what was happening to them, or could not communicate their lack of consent – but because they mistakenly believed that the sex would have some therapeutic value. The courts expanded the statute's scope to include a sexual act where consent was induced by deceit. Most certainly, that is not a strict construction of the statute.

"Courts do not have the authority to read into a statute a legislative intent that is contrary to its plain and ordinary meaning." *State v. Rowe,* 63 S.W.3d 647, 650 (Mo. banc 2002). If the legislature had intended for "incapacitated" to mean consent to sexual acts induced by duress or deception – which is what the state experts said Dr. Cone did – then the legislature would have said just that. And, in fact, ***after*** the charged offenses

5

purportedly occurred in this case, the legislature amended – effective January 1, 1995 – Sections 566.040 and 566.070, RSMo, replacing the term "incapacitated" with lack of "consent." The statute defining consent provided that assent was not consent if given by a person "unable to make a reasonable judgment as to the nature or harmfulness of the conduct charged" or if assent was induced by force, duress, or deception. Section 556.061(5), RSMo. Had the term "incapacitated" already included assent obtained through duress or deception, there would have been no need to amend the statutes.

It is also noteworthy that Missouri's legislature contemplated protecting, as a class, the clients of psychotherapists by criminalizing any sexual behavior between a client and her therapist, but ultimately did not pass legislation to that effect. In 1992, one to two years before the charged offenses occurred, a bill criminalizing sexual misconduct by a psychotherapist with a client was introduced in the Missouri House but failed to pass. Psychotherapist Sexual Misconduct: A Proposal for Legislative Change in Missouri, 62 UMKC L. Rev. 777, 814 (Summer, 1994). This suggests that the Missouri legislature was not prepared to impose strict liability for sexual conduct between a psychotherapist and a client, due to a client's inherent dependence on and vulnerability to a therapist.

Where a term has been traditionally defined through case law, "[u]nless a statute clearly abrogates common law by express statement or by implication, the common law stands." *Ahern v. P&H, LLC*, 254 S.W.3d 129, 133 (Mo. App. E.D. 2008) (where statute did not expressly or implicitly abrogate earlier case law interpretations of the definition of

6

"idiopathic" for purposes of workmen's compensation claim, the Labor and Industrial Relations Commission did not err in using the common law definition).

The common law interpretation of the same language as that used in the statute – "that . . . mental condition . . . in which a person is . . . *unable to appraise the nature of his conduct*" – was far different from the meaning ascribed to the statute by the prosecution's expert witnesses, the trial court, the motion court, and the appellate court in Dr. Cone's case. Section 556.061(13), RSMo.

In *State v. Williams*, a rape case, the jury was instructed to find the defendant guilty if, at the time he had sexual intercourse with the alleged victim, she "was a person of unsound mind, and of such weak intellect and intelligence that *she could not and did not know or comprehend the nature and consequence of such an act* . . . ." 51 S.W. 88 (Mo. 1899). In *State v. Warren*, also a rape case, the jury was similarly instructed to determine whether the alleged victim "could not and did not *know or comprehend the nature and consequence of such an act* . . . . 134 S.W. 522, 525 (Mo. 1911). In *State v. Schlichter*, the jury was similarly instructed to determine whether the victim was "of such a weak and disordered mind that she *could not comprehend or understand the nature and consequence of such an act* . . . ." 173 S.W. 1072, 1076 (Mo. 1915).

In each of these cases, the victims' mental conditions prevented them from understanding that they were engaging in sexual conduct. In *Williams*, the 34 year old victim had lived with her parents her entire life, she could not "learn her letters or count,"

7

she could not tell time, and she did not know right from wrong. *Williams*, 51 S.W. at 88.

In *Warren*, the court found that the jury had been incorrectly instructed that conviction was allowed if a person of ordinary intelligence would have recognized that the victim was insane. *Warren,* 134 S.W. at 527. The court stated, "Mere insanity, even if known, does not make the act rape. The insanity must totally destroy the capacity to consent." *Id*.

In *Schlicter*, there was adequate evidence to find that the victim was incapable of consenting to sexual intercourse, but the evidence did not establish that the defendant knew of her incapacity. *Schlicter*, 173 S.W. at 1076. The victim had suffered "spasms" as a young child, was very nervous, withdrew from school because she could not keep up with her class, was unable to tell time, and talked like an 8 year old child. *Id*. While the victim's history may have satisfied the jury that she could not consent, her history was unknown to the defendant, and her demeanor at the time did not reveal to him that she was incapacitated. *Id*.

Had the legislature intended to abrogate the common law understanding of what it meant to be unable to understand the nature of one's conduct, it would not have reintroduced that language into Section 556.061(13), RSMo. *Cf., State v. Bouse*, 150 S.W.3d 326, 334 (Mo. App. W.D. 2004) (by eliminating common law terms "open," "gross," and "notorious," from statute creating the offense of sexual misconduct in the second degree, legislature intentionally abandoned common law requirement that indecent

8

exposure occur in public or in the presence of the victim).

After Section 556.061(13), RSMo, was adopted, it was determined in *State v. Buck*, that the state's evidence adequately demonstrated that the victim was unable to appreciate the nature of her conduct where it was shown that she was schizophrenic and had an "impaired sense of reality" and "disordered thoughts and perceptions." 724 S.W.2d 574, 575-576 (Mo. App. W.D. 1987). No Missouri case prior to Dr. Cone's had ever deemed a woman unable to appreciate the nature of her conduct on evidence that fell short of demonstrating impaired reality, delusional thinking, or severe developmental disability.

### B.    States with similar statutory terminology

Other states, using definitions similar to Missouri's definition of "incapacitated," that have prosecuted sexual offenses on the basis that the victim was incapable of consenting to the conduct due to mental disease or defect have done so where the victim was developmentally disabled and had a limited understanding of the act of sex and its moral consequences. *See, State v. McMullen*, 91 Ill.App.3d 184, 414 N.E.2d 214 (1980) (mentally retarded girl was incapacitated where she had some understanding of the physical nature of sex, but did not understand how sexual activity affected a person's life or how illicit activity is regarded by society); *People v. Easley*, 42 N.Y.2d 50, 364 N.E.2d 1328 (1977) (mentally retarded woman with limited knowledge of the physiological nature of sex and no understanding of its social consequences was incapable of appraising

9

the nature of her conduct); *State v. Olivio*, 123 N.J. 550, 589 A.2d 597 (1991) (sixteen year old mentally retarded girl with below average IQ was incapacitated, where she had an inadequate understanding of physical aspects of sex and did not understand that her body was private or that she had the right to be free from sexual invasions by others).

Other states have concluded that mentally impaired women who had a basic understanding of sex and its consequences were capable of consenting to a sexual act. *See, Adkins v. Commonwealth*, 20 Va.App. 332, 457 S.E.2d 382 (1995) (mentally retarded girl who knew that a person could become pregnant or contract AIDS from having sexual intercourse was not mentally incapacitated); *State v. Johnson*, 155 Ariz. 23, 745 P.2d 81, 84 (1987) (woman disabled due to head injury was capable of consenting to sexual act where, for the most part, she functioned independently and had a normal knowledge about sex and procreation); *People v. Blunt*, 65 Ill.App.2d 268, 212 N.E.2d 719, 720-721 (1965) (although victim attended special education classes and had an IQ in the 70s, she understood sex, pregnancy, venereal disease and moral implications of sex, and therefore was able to understand the nature and consequences of sex).

These cases demonstrate that a woman is usually not deemed incapable of understanding the nature and consequences of sexual behavior unless she suffers severe mental impairment. Furthermore, these cases employ a practical, straightforward assessment of what constitutes the "nature" of sexual behavior – the physical act itself – and what constitutes the "consequences" of sexual behavior – pregnancy, venereal

10

disease, and moral implications.

With the exception of *Adkins v. Commonwealth*, these cases were decided before the conduct at issue in this case occurred. These cases demonstrate that the motion and appellate courts' interpretation of Section 556.061(13), RSMo, was far outside the norm of how other courts have interpreted similar statutes.

### C.    Conclusion

The statutory definition of "incapacitated" did not put Dr. Cone on notice that having sexual relations with a consenting patient would be deemed criminal. *See State v. Leiding*, 112 N.M. 143, 812 P.2d 797, 799 (1991) (statute criminalizing sexual penetration when the perpetrator knows the victim suffers from a mental condition which renders the victim incapable of understanding the nature or consequences of the act did not provide notice to a psychologist that having consensual sex with a patient would be deemed criminal). If Missouri wanted to criminalize sexual conduct between therapists and their patients, the legislature could have enacted a statute doing just that. *See Griffith v. State*, 504 S.W.2d 324, 326 (Mo. App. Spring. Dist. 1974) ("[I]t is not a proper function for any court to judicially repeal laws on purely sociological considerations - movant would do better to address . . . the General Assembly for it to determine if modern mores require the alteration or expunction of sodomy statutes.") But Missouri courts cannot achieve that end by expanding Section 556.061(13), RSMo, to include conduct outside the scope of the plain and ordinary meaning of the statutory language.

11

WHEREFORE, Dr. Cone asks this Court to grant his application for transfer.

Respectfully submitted,

Rebecca L. Kurz, Mo. Bar #40451
MORGAN PILATE LLC
142 N. Cherry
Olathe, KS 66061
Tel. (913)-829-6336
Fax (913)-829-6446
rkurz@morganpilate.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this application was sent by U.S.

mail, postage prepaid, to Mr. Daniel N. McPherson, Assistant Attorney General, P.O. Box

899, Jefferson City, Missouri 65102, on June 15, 2010.

Rebecca L. Kurz

12